## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### "IN ADMIRALTY"

HAPPY ENDING YACHT, LLC,

      Plaintiff,

v.

NATIONAL MARITIME SERVICES, INC.

      Defendant.

Case No.

### **COMPLAINT**

Plaintiff, Happy Ending Yacht, LLC, by and through the undersigned counsel, and pursuant to the Federal Rules of Civil Procedure, hereby sues Defendant, National Maritime Services, Inc., and as grounds in support thereof, states the following:

### **JURISDICTION AND VENUE**

1.      This action is brought under the admiralty and maritime jurisdiction of the Court pursuant to Federal Rule of Civil Procedure 9(h) and 28 U.S.C. § 1333.

2.      Plaintiff, Happy Ending Yacht, LLC (hereinafter, "HEY"), is a Florida limited liability company, located at 2511 Laguna Terrace, Fort Lauderdale, Florida 33316.

3.      Defendant, National Maritime Service, Inc. (hereinafter, "National Maritime"), is a Florida corporation, located at 2945 West State Road 84, Fort Lauderdale, Florida 33312.

4.      Venue is proper in the United States District Court for the Southern District of Florida because Defendant maintains an office within this District and a substantial part of the events or omissions giving rise to the claims occurred within this District.

5.      All conditions precedent to filing this action have occurred or been waived.

## GENERAL ALLEGATIONS

6.      At all times material hereto, HEY owned *Happy*, a 2005 90' Hargrave Motor Yacht bearing Hull Identification Number HCY97635E405 (hereinafter, "Vessel").

7.      On April 28, 2025, Vannessa R. Lucier filed a lawsuit against the Vessel, *in rem*, in the United States District Court for the Southern District of Florida styled *Vannessa R. Lucier v. M/Y Happy*, Case Number 0:25-cv-60814-Leibowitz (hereinafter, "Foreclosure Action").

8.      On April 29, 2025, Ms. Lucier moved for the appointment of National Maritime as Substitute Custodian for the Vessel in the Foreclosure Action.

9.      Ms. Lucier represented that National Maritime was prepared to provide security, wharfage, and routine services for the safekeeping of the Vessel during the pendency of the Foreclosure Action.

10.      Ms. Lucier represented that National Maritime had adequate facilities for the care, maintenance, and security of the Vessel during the pendency of the Foreclosure Action.

11.      Ms. Lucier represented that National Maritime was capable of performing maintenance required for safekeeping of the Vessel during the pendency of the Foreclosure Action.

12.      To induce the Court to appoint National Maritime as Substitute Custodian, Ms. Lucier and National Maritime filed a consent and indemnification agreement releasing the United States Marshal from all liability in connection with the care, maintenance, and security of the Vessel during the pendency of the Foreclosure Action.

13.      Based on these representations, the Court appointed National Maritime to act as Substitute Custodian for the Vessel in the Foreclosure Action.

14.      On May 8, 2025, the United States Marshal arrested the Vessel and surrendered possession to National Maritime as Substitute Custodian.

15.     National Maritime maintained exclusive care, custody, and control of the Vessel from May 8, 2025 until August 15, 2025, when the Court ordered its release.

16.     During the period of arrest, National Maritime rejected requests by HEY to allow its captain on the Vessel to assist with routine care and maintenance.

17.     During the period of arrest, National Maritime frequently left the Vessel unattended and failed to conduct regular inspections to preserve its condition.

18.     National Maritime had a duty, equivalent to that of the United States Marshal, to exercise reasonable care to maintain the Vessel in the same condition as when it was taken into custody by the United States Marshal.

19.     National Maritime breached its duty by failing to perform ordinary maintenance required for the safekeeping of the Vessel.

20.     As a result, the condition of the Vessel deteriorated while in the exclusive care, custody, and control of National Maritime.

21.     The exterior finishes became stained with dirt and residue from rainwater runoff.

22.     The stainless-steel rub rails, grab rails, hardware, and engine room intakes became tarnished and corroded.

23.     The gelcoat and painted surfaces became oxidized due to the lack of regular washing.

24.     Mold and mildew developed on the exterior surfaces.

25.     The canvas covers became stained from standing water and repeated cycles of accumulation and evaporation.

26.     The furniture was left uncleaned, causing the varnish and finishes to cloud and degrade.

27.     The decks accumulated mold growth and heavy staining from prolonged exposure to stagnant water and temperature fluctuations.

28.     The drain channels were not kept clear of debris, resulting in blockage of the drainage system.

29.     The clogged drains caused water to overflow and cascade onto the rudder table and steering gear, producing corrosion and compromising the integrity of those components.

30.     A water pipe burst causing water to flood into the cabins and adjoining spaces.

31.     The resulting humidity and standing water from the burst pipe caused wood veneers and interior joinery to swell and deform.

32.     The interior finishes and furnishings sustained damage from moisture, temperature fluctuations, and lack of ventilation.

33.     Upholstered goods became embedded with dirt and mildew due to neglect.

34.     The underwater lighting system and electrical fittings were exposed to water and high humidity, leading to corrosion and premature degradation.

35.     Two air handlers became inoperative due to lack of use and maintenance.

36.     The sea chest was clogged with marine growth and debris and had to be cleared before the engines could be safely operated.

37.     The interior wall liners were found sagging in multiple locations due to moisture, temperature fluctuations, and lack of ventilation.

38.     The foregoing damage was not the result of normal wear, preexisting defects, or deferred repairs, but resulted from National Maritime's failure to perform basic maintenance during the period of arrest.

39.     As a direct and proximate result of the foregoing, the Vessel suffered avoidable damage, corrosion, and loss of value during the period of arrest.

## COUNT I
## NEGLIGENCE

40.     HEY realleges and incorporates by reference Paragraphs 1-39 herein.

41.     At all times material hereto, National Maritime was the Court-appointed Substitute Custodian for the Vessel in the Foreclosure Action and owed a duty to exercise reasonable care to safeguard, maintain and preserve the Vessel in at least the same condition as when taken into custody by the United States Marshal.

42.     This duty included, without limitation, the obligation to provide adequate supervision, perform routine inspections, conduct ordinary maintenance, and protect the Vessel from deterioration, corrosion, and water intrusion.

43.     National Maritime breached its duty of care by failing to properly monitor, maintain, and preserve the Vessel during the period of arrest.

44.     National Maritime further breached its duty by:

    a.   Leaving the Vessel unattended for extended periods;

    b.   Failing to perform routine cleaning, inspection, and environmental control;

    c.   Allowing the accumulation of dirt, mold, and debris;

    d.   Failing to keep drain channels clear and watertight systems functioning;

    e.   Permitting uncontrolled humidity and temperature fluctuations that damaged interior finishes and machinery; and

    f.   Employing personnel who lacked familiarity with the systems and maintenance requirements for the Vessel.

45.     As a direct and proximate result of National Maritime's negligence, the Vessel sustained significant and avoidable physical damage, corrosion, and loss of value.

46.     HEY has incurred and will continue to incur substantial costs to repair and restore the Vessel to its pre-arrest condition.

**WHEREFORE,** Plaintiff, Happy Ending Yacht, LLC, demands judgment against Defendant, National Maritime Services, Inc., for damages, pre- and post-judgment interest, costs, and such other and further relief that the Court deems just and proper.

Dated: October 21, 2025                    Respectfully submitted,

**FIORILLI LAW GROUP, P.A.**
*Attorneys for Plaintiff*
3001 West State Road 84, Third Floor
Fort Lauderdale, Florida 33312
Office: (954) 797-7719
Direct: (561) 727-9337
E-mail: justin@fiorillilaw.com
E-mail: isaiah@fiorillilaw.com

*/s/ Justin S. Fiorilli*
**JUSTIN S. FIORILLI, ESQ.**
Florida Bar No. 111481